# CHARLESTON.

## KAUFMAN v. MASTIN.

Submitted September 3, 1908.   Decided November 2, 1909.

1. APPEAL AND ERROR—*Dismissal—Moot Case.*

Whenever the judgment, if left unreversed, will preclude the party against whom it stands as to a fact vital to his rights, though the judgment if affirmed may not be directly enforceable by reason of lapse of time or change of circumstances pending appeal, a writ of error will not be dismissed as involving only a moot case. (p. 101).

2.  LANDLORD AND TENANT—*Holding Over—Renewal of Tenancy by
the Month.*

A tenant's holding over and paying monthly rent beyond
the term of a lease for a year, relating to urban premises,
in which lease rent is reserved by the month and is payable
at monthly periods, does not, alone, imply a renewal by the
year. A renewal of the tenancy by the month is thereby im-
plied. (p. 102).

Error to Circuit Court, Mercer County.

Action by Sarah Kaufman against T. Frank Mastin. Judg-
ment for plaintiff, and defendant brings error.

*Affirmed.*

*Hale & Pendleton* and *D. M. Easley,* for plaintiff in error.

*Harold A. Ritz* and *Anderson, Strother & Hughes,* for defen-
ant in error.

ROBINSON, JUDGE:

For the possession of a drug-store room, located in Bluefield,
Kaufman sued Mastin in an action of unlawful detainer. Upon
the trial there was a verdict for plaintiff by direction of the court,
and judgment accordingly. This writ of error is prosecuted to
the refusal of the court to set aside the verdict and award a new
trial.

Mastin had rented the property from one Goldstein, by a lease
in writing, containing these provisions: "This lease is to con-
tinue for one year from the first day of May, 1904. The rent to
be paid for said room above described is Fifty dollars per
month, payable at the last of each month respectively." At
the expiration of the first year of this lease, the tenant held over
and continued to pay the monthly rent, which was accepted by
the landlord. He was, by thus holding over, in possession when,
in August, 1906, Goldstein conveyed the property to Kaufman.
After this conveyance was made, Mastin paid the monthly rent
to Kaufman, who accepted same. On March 11, 1907, Kauf-
man gave Mastin, the tenant, notice to quit and deliver posses-
sion on May first of that year. Mastin refused so to quit and
deliver possession, and the action was instituted. He was still
in possession at the time of the judgment and the service of
process on the writ of error. But, thereafter, on May 1, 1908,

he did vacate. In this court an affidavit has been filed setting forth the fact that he vacated on that date.

In the action as originally instituted, damages for the detention of the property were claimed. On the trial, however, the plaintiff struck out his demand for damages, "without prejudice to his right to claim such damages in any other appropriate suit or action." So thereafter the action involved only the right to possession.

Shall the writ of error be dismissed as making only a moot case? It is urged that it shall be. In this connection, it is submitted that, since the tenant has vacated, the suit avails nothing; that it pertains only to the possession of the property, which possession can no more be an issue, owing to the act of the tenant in delivering up the same. But Mastin, who obtained this writ of error, resists the motion to dismiss, and submits that a decision as to the legality of the judgment for possession is still a vital one. He insists that if the judgment is to stand, he is bound to respond in an action to recover for the use and occupation of the property, since the judgment binds him to the fact that he unlawfully withheld possession from May 1, 1907, until he vacated one year thereafter. If the judgment is not overthrown, Mastin is precluded by it, in an action to recover for use and occupation, from showing that he was in rightfully under the lease. Thus he may be made to pay a larger sum than the stipulated rent. So it does appear vital to the interests of Mastin that he should continue to attack the legality of the judgment. Kaufman plainly reserved action to recover for use and occupation. If the tenant was in lawfully, under the lease, he can be made to pay fifty dollars per month for the time; if he was in unlawfully, he may be made to pay more. What shall be the measure? It all depends on whether he was in unlawfully or not. And that question is involved in this writ of error. Whenever a case involves rights vital as between the parties, it is not a moot case. If the writ of error is dismissed, the judgment which says Mastin was unlawfully in possession is left in force. Then Kaufman may recover a much larger sum per month than the rent stipulated in the lease. Without decision we would thereby preclude Mastin in a matter of live issue, reserved in this very record. There is substantial right depending upon a decision as to

whether or not the judgment shall stand. *Ferguson* v. *Millender,* 32 W. Va. 30; *Robinson* v. *State,* 87 Tex. 562; *McWhorter* v. *Northcult,* 94 Tex. 86; *McNulty* v. *Porter,* 58 Iowa 19. The motion to dismiss is overruled.

A consideration of the evidence adduced at the trial shows that the case turned in fact on a question of law. There was no renewal of the lease at its expiration other than such as may be implied from the tenant's holding over, his paying a monthly rent, and the landlord's acceptance of that rent. If, when Mastin held over beyond the original period of a year, paying monthly a rent reserved by the month, which the landlord accepted, he thereby became a tenant by the month and not by the year, then the notice given him was good to terminate such monthly tenancy, and the judgment is warranted. But, if he thereby became a tenant by the year, the necessary three months' notice was not given him and the judgment should not stand. Recently, in the case of *White* v. *Sohn,* 65 W. Va. 409, this Court had under consideration the question of implied renewal of tenancy by a holding over beyond the original term of a lease. True, that case as to the exact character of the original lease is not wholly similar to this one. It is there shown, however, that a renewal by the month, and not by the year, is to be implied from a tenant's mere continued possession and payment of a monthly rent beyond the period of a lease, though for a year, or term of years, which reserves the rent as a monthly one. The rent period—that is, the stated period by which the rent is reserved in a lease, is the criterion by which to measure an implied renewal by a holding over. McAdam on Landlord and Tenant, § 39; Jones on Landlord and Tenant, § 215. Of course, if the lease is originally for a year, or term of years, and the rent is reserved as a yearly rent, even though payable in instalments, a holding over and acquiescence therein of the landlord implies a renewal by the year. The distinction that it is the reservation of an *annual* rent, from which the implication of a renewal by the year arises, has not been observed as frequently as it should have been for the sake of consistency and enlightened decision. To create a yearly tenancy by implication, the property must be occupied under a rent payable as a yearly one. 24 Cyc. 1028. "An agreement to pay rent is an essential element of a tenancy from year to year, and the times

at which it is payable must have reference to a yearly holding, such as by the year, quarter or some aliquot part of a year." Washburn on Real Property, § 798.    "By the common law, if a tenant who has occupied and paid rent annually, holds over into a new year, it is evidence of a new demise for a year." Wood on Landlord and Tenant, § 13.    "Every general letting, if the lessor accepts yearly rent, or rent measured by any aliquot part of a year, if not expressed to be an estate at will, is an estate from year to year." 2 Minor's Institutes (4th Ed.) 200.    "All leases for uncertain terms are, *prima facie,* leases at will; it is the reservation of an annual rent that turns them into leases from year to year." DeGrey, C. J., 2 W. Black. 1174. The general doctrine that a holding over under a lease for a year, or term of years, implies a renewal for a year, or by the year, grew out of the reservation of an annual rent in farming leases.    When, however, the original term is for a year, or term of years, and a rent other than annual rent is reserved, the implied renewal by a holding over is for the term by which the rent is reserved and by which the rent is accepted by the landlord after the term of the original lease expires.    The authorities cited in *White* v. *Sohn, supra,* sustain this principle.

The reservation of rent, with its payment at stated periods, is the principal, but not the only, criterion to determine the implied term.    The intention of the parties should prevail.    10 Amer. & Eng. Enc. of Law, 201.    The implication may be repelled by evidence.    *Williamson* v. *Paxton,* 18 Grat. 475.    Reference may be had to the use to which the property is put. Whether it is farm or urban property may enter into consideration.    *Backus* v. *Sternberg,* 59 Minn. 403; *Hammon* v. *Douglas,* 50 Mo. 434; 24 Cyc. 1033.    Permitting a farm tenant to hold over may indicate that he is to hold for farm uses which ordinarily require a year; but such a consideration in nowise enters into a lease of city property.    An implied monthly tenancy is not inconsistent with the use of premises for a drug-store.    In this case, there is nothing from which implication of the term can be drawn but the fact of the tenant's remaining in possession by the landlord's acceptance of a monthly rent.    A tenancy by the month is thereby implied.

In the light of the propositions stated above, the case made on the trial was clearly for the plaintiff.    The court ruled

rightly in directing a verdict. The notice was properly admissible in evidence as one to terminate a monthly tenancy; and such a tenancy was Mastin's by his holding over and paying a monthly rent. The judgment is right and it is affirmed.

*Affirmed.*